## *EX PARTE* BROWN.

### CITY COUNCIL v. BROWN.

1. CITY COURT OF CHARLESTON—APPEAL.—The mayor of Charleston having been given by statute the powers of a justice of a quorum within the city limits, and all such powers of the mayor having been conferred by subsequent statute on the recorder of the City Court of Charleston, with all the powers, authority, and jurisdiction of a trial justice, such recorder's court is one of the inferior courts authorized by the Constitution, the recorder sits by virtue of the powers of a trial justice conferred upon him ; and, therefore, from a conviction in his court under a municipal ordinance an appeal lies to the Circuit Court.

2. CASES CRITICISED.—This case distinguished from *Ex parte* Schmidt, 24 S. C., 363, and Anderson *v.* O'Donnell, 29 *Id.*, 355 ; and Beaufort *v.* Ohlandt, 24 *Id.*, 158, followed.

Before NORTON, J., Charleston, November, 1893.

This was an appeal to this court by Emma Brown from an order denying to her the right of appeal from a conviction and sentence in the Recorder's Court of the city of Charleston.

*Messrs. E. B. Hollings* and *S. J. Lee,* for appellant.

*Mr. Charles Inglesby,* contra.

September 12, 1894. The opinion of the court was delivered by

MR. JUSTICE GARY. The facts out of which this case arose, are set forth in the order of the presiding judge, which is as follows: "This case was heard and defendant convicted, and fined in the police court of the city of Charleston, for violating a city ordinance with reference to disorderly houses. A notice of appeal was served in five days upon the city recorder, who is the presiding officer and judge of the said court, and a similar notice was served upon the corporation counsel. No report having been filed in this court by the recorder, a rule was taken out by defendant's attorneys, requiring the recorder to show cause why the said return should not be compelled by attachment. In response to this rule, the corporation counsel appeared before me and moved to dismiss the rule upon the ground that there is no appeal provided by law from the police court of the city of Charleston. After hearing full argument of counsel for the defendant, as well as the corporation counsel, I am of opinion that the police court of the city of Charleston, established many years ago, both by State statute and city ordinance, and recognized from time to time since by the statutes of the State, is a different court from a trial justice court, or from the court contemplated in the cases of *Beaufort* v. *Ohlandt*, and *Lexington* v. *Wise*, 24 S. C. It is such a court as is referred to in *Ex parte Schmidt*, 24 S. C.; and there being no appeal provided by law from that court: It is ordered, That the motion to discharge the rule to show cause, above referred to, be granted, and that the rule be dismissed."

From this order the defendant appealed on the following grounds: I. Because his honor erred in deciding that there was no appeal from the judgment and sentence of the recorder of Charleston while presiding at the police court. II. Because his honor erred in deciding that a person carried before the police court of Charleston County, charged with a violation of a city ordinance, has no right to have the case transferred to the city court or a trial justice for trial by jury, and has no right to appeal from the judgment of said court. III. Because the defendant has the right of appeal from any sentence from any court in South Carolina, affecting her rights, and his honor

erred in not so holding.    IV.  Because his honor erred in dis-
missing the rule requiring the recorder to make his return.
V.  Because the city recorder, when he presides at the police
court, is vested with the powers of a trial justice of this State,
and is under the same restrictions and limitations of such jus-
tices, and his honor erred in not so holding.

The history of the police court is as follows: 1. It was estab-
lished by a city ordinance ratified August 25, 1836.    Section 3
of the ordinance enacts that "It shall be the duty of the
intendant to hold a police court daily at 9 A. M., or at
such other hour as may be specially appointed by him
for that purpose, either at the main guard house or at the city
hall, for the examination of all slaves or other persons com-
mitted to the guard house, or otherwise lawfully brought before
him to be disposed of according to law," &c.    2.  In 1836 (7
Stat., 148), an act was passed "to alter and amend the charter
of the city of Charleston, and for other purposes therein men-
tioned," the fourth section of which is as follows: "That the
said mayor of the city of Charleston shall have power to issue
warrants, and cause all offenders against the law to be brought
before him at the police court established under the ordinances
of the city council of Charleston, or at such other time and place
as he may direct, and either to release, admit to bail, if the
offence be bailable, or commit to the custody of the sheriff of
Charleston District, who is hereby commanded and required to
receive the same and keep in safe custody until discharged by
due course of law.    And the said mayor shall, within the cor-
porate limits of the city, have and exercise all the powers of a
justice of the quorum.    And the said mayor shall, and may, by
compulsory process, enforce the attendance of witnesses who
may be required to give testimony before the said police court,
and shall and may punish as for contempt all persons who may,
in the presence of said court, be guilty of any riotous or dis-
orderly conduct, or who may wilfully, in any other manner,
interrupt the proceedings of the said police court."  3.  In 1878
(16 Stat., 467), an act was passed, the title of which was "An
act to define and regulate the jurisdiction of the police court of
Charleston."    Section 1 of said act is as follows: "That from

and after the ratification of this act, it shall be the duty of the recorder of the city of Charleston to hold the police court of the city of Charleston, heretofore held by the mayor of Charleston, and that in addition to the authority heretofore vested in the recorder, he shall be invested with all the power and authority heretofore vested in the mayor as the presiding officer of the police court, and with all the powers, authority, and jurisdiction of a trial justice of this State in criminal matters and cases, except that the recorder shall not be allowed to charge or receive any of the fees allowed by law to a trial justice."

Sec. 1 of art. IV. of the Constitution provides that: "The the judicial power of this State shall be vested in a Supreme Court, in two Circuit Courts, to wit: a Court of Common Pleas, having civil jurisdiction, and a Court of General Sessions, with criminal jurisdiction only, in Probate Courts, and in justices of the peace. The General Assembly may also establish such municipal and other inferior courts as may be deemed necessary."

In the case of *City Council* v. *Ashley Phosphate Co.*, 33 S. C., 25, it is decided that the City Court of Charleston was created under that provision of the Constitution empowering the General Assembly to "establish such municipal and other inferior courts as may be deemed necessary." The court uses the following language: "So that we conclude that the creation of the City Court of Charleston was authorized by that provision of the Constitution empowering the General Assembly to create municipal and other inferior courts."

The police court owes its creation to the same provision of the Constitution. If we strike out the words: "he shall be invested * * * with all the powers, authority, and jurisdiction of a trial justice in this State in criminal matters and cases," in section 1 of the act defining the jurisdiction of the police court of Charleston, the jurisdiction of that court will be left in a very uncertain and indefinite state, with no well defined limits. Not only is the act of 1878, *supra*, dependent upon these words to define the jurisdiction of the police court, but the act of 1836, when the mayor was the presiding officer of said court, was likewise dependent upon the following provision so as to define the jurisdiction of said court, to wit: "And the

said mayor shall, within the corporate limits of the city, have and exercise all the powers of a justice of the quorum.''

The principle announced in *Ex parte Schmidt*, 24 S. C., 363, and *Anderson* v. *O'Donnell*, 29 *Id.*, 355, is not applicable to this case, because the powers and jurisdiction of a trial justice were not conferred upon the municipal courts in which those cases were tried. This case comes within the rule laid down in *Beaufort* v. *Ohlandt*, 24 S. C., 158, in which Mr. Justice McIver, speaking for the court, says: ''Now, as it is quite clear that a municipal corporation has no powers except such as are conferred by its charter, and as it does not appear that any power to imprison for a violation of any of its ordinances has been conferred upon the town council, or even to impose a fine beyond a prescribed limit, it would seem to follow that the powers conferred upon the intendant of the town of Beaufort by the act of 1874, could only be exercised as a trial justice, with his jurisdiction so enlarged as to enable him to try all offenders against the ordinances of the town, and to impose either fines or imprisonments, or both, within the limits prescribed to trial justices. This is the necessary construction of the act in order to make it harmonize with well settled principles, and preserve the right of trial by jury and the right of appeal, so carefully guarded by the provisions of the Constitution. Sec. 19 of art. I. of the Constitution provides that 'All offences less than felony, and in which the punishment does not exceed a fine of one hundred dollars or imprisonment for thirty days, shall be tried summarily before a justice of the peace or other officer authorized by law, on information under oath, without indictment or intervention of a grand jury, saving to the defendant the right of appeal.' Besides this general provision securing the right of appeal from all inferior courts, it seems that in every instance where such a court is specially provided for, the framers of the Constitution again provided in express terms for the right of appeal.''

Also, ''Now, if the act of 1874 should be regarded as conferring upon the intendant of the town of Beaufort all the powers of a trial justice, and in addition thereto, constituting the intendant an independent municipal court for the trial of

all offenders against the ordinances of said town, then the act fails to define or limit the jurisdiction of such municipal court as it is necessary to do; for it is quite clear that a municipal court can only enforce such ordinances as are passed in accordance with law, and, as we have seen, there does not appear to be any act conferring authority on the town council of Beaufort to impose as a penalty for the violation of any of its ordinances, any thing more than a fine of thirty dollars, and yet the act under consideration purports to give, to what is claimed to be a municipal court, the power to impose fine or imprisonment at its discretion, or both. But if the act of 1874 be construed as we think it should be, to confer upon the intendant all the powers and jurisdiction of a trial justice, with the additional power of trying all violations of the ordinances of the town of Beaufort, then no such difficulty can arise; for if, as trial justice, he tries offenders against the ordinances of the town, he may, as such, impose fine or imprisonment to the extent of the jurisdiction of a trial justice. It seems to us, therefore, that there was no error on the part of the Circuit Judge in entertaining the appeal from the judgment of the intendant's court, and no error in holding that the respondent would be entitled to trial by jury if demanded."

The recorder tried the case by reason of the fact that he was "invested with all the powers, authority, and jurisdiction of a trial justice of this State in criminal matters and cases."

1   As the recorder tried the case under the powers of a trial justice conferred upon him, it follows, necessarily, that the defendant had the right of appeal, which is incidental to such trial.

It is the judgment of this court, that the order appealed from be reversed, and that the case be remanded to the Court of General Sessions for Charleston County for such further proceedings as may be necessary to carry out the views herein announced.